# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GAYLE ISHAM,

    Plaintiff,

v.

R. ARANAS, *et al.*,

    Defendants.

Case No.: 3:16-cv-00696-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 17, 19

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court are two motions that relate to whether the parties entered into an enforceable agreement to settle this action. First, Plaintiff filed an "Omnibus Motion" where he essentially seeks to rescind the settlement agreement because he claims he was fraudulently induced into settling his action. (ECF No. 17.) Defendants filed a response to Plaintiff's motion. (ECF No. 18.) Plaintiff filed a reply. (ECF No. 22.)

    Second, Defendants filed a Motion to Enforce Settlement Agreement, arguing that Plaintiff was provided with accurate information and the parties entered into a binding and enforceable agreement. (ECF Nos. 19, 27 (transcript of settlement proceeding).) Plaintiff filed a response to Defendants' motion. (ECF No. 30.) Defendants filed a reply. (ECF No. 31.) Plaintiff filed a sur-reply. (ECF No. 32.)

    After a thorough review, it is recommended that Defendants' motion to enforce the settlement be granted, and Plaintiff's omnibus motion be denied.

# I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*) Defendants are Correctional Officer Linford and Warden Nevin. (*Id.*)

The court screened the amended complaint and allowed Plaintiff to proceed against defendants Nevin and Linford with an Eighth Amendment failure to protect claim. (ECF No. 8.) The court also allowed Plaintiff to proceed with a Fourteenth Amendment equal protection claim against defendant Nevin. (*Id.*) The complaint is based on allegations that Plaintiff slipped and fell after Defendants failed to sand or salt icy sidewalks for prisoners, despite doing so for prison staff. (ECF No. 7.) The complaint further alleges that defendant Linford offered no help to Plaintiff after the fall that resulted in the injury. (*Id.*)

The parties participated in an early mediation conference (EMC) on March 5, 2019. (ECF No. 13.) The minutes from that proceeding indicate that a settlement was reached, and the general terms of the settlement were placed on the record. (*Id.*) The parties agreed to submit a stipulation and proposed order of dismissal with prejudice no later than April 4, 2019. (*Id.*) On March 18, 2019, Plaintiff filed his omnibus motion which essentially asserts that he was fraudulently induced into settling his case based on representations by the mediator and defense counsel that he did not exhaust his administrative remedies. Defendants maintain that Plaintiff was given accurate information regarding his failure to exhaustion, and on March 29, 2019, Defendants filed their motion to enforce the settlement agreement. (ECF No. 19.)

After reviewing the transcript of the EMC and reviewing the parties' briefing, the court finds that the parties did have an agreement as to the essential terms. The agreement meets the

basic contract elements of offer and acceptance, meeting of the minds, and consideration, and was agreed upon free of fraud and deceit. Therefore, the court should enforce the agreement, as set forth in the record of the EMC, and deny Plaintiff's omnibus motion.

## II. LEGAL STANDARD

"'The construction and enforcement of settlement agreements are governed by principles of local law.'" *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (quoting *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004)). "That is true, 'even where a federal cause of action is settled or released.'" (*Id.*) (quoting *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993)).

"Under Nevada law, 'a settlement agreement['s] construction and enforcement are governed by principles of contract law.'" (*Id.*) (citing *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (2005)). "The 'ultimate goal is to effectuate the contracting parties' intent.'" *In re Amerco Derivative Litig.*, 252 P.3d 681, 693 (Nev. 2011). "Although an analysis of a settlement's terms starts with the language of the agreement, 'when that intent is not clearly expressed in the contractual language, [courts] may also consider the circumstances surrounding the agreement.'" *Id*.

For a contract to be enforceable, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *See Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 255 (Nev 2012). Consideration requires something that is "bargained for and given in exchange for an act or promise." *Zhang v. Eighth Judicial Dist. Ct.*, 120 Nev. 1037, 103 P.3d 20, 24 n. 11 (2004), *abrogated on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008). A contract may be formed when the parties have agreed to the materials terms,

even though the contract's exact language is not finalized until later. *May*, 121 Nev. at 672, 119 P.3d at 1257.

The Ninth Circuit has held that when the parties negotiate a settlement in off the record sessions in court, and come to an agreement and place the terms on the record in open court, there is no need for an evidentiary hearing as to whether there is an agreement or what the terms are because: "the parties [have] dispelled any such questions in open court." *Doi v. Halekulani*, 276 F.3d 1131, 1139 (9th Cir. 2002) (citation omitted).

## III. DISCUSSION

### A. Settlement

The parties participated in an EMC on March 5, 2019, with the Honorable Valerie P. Cooke as mediator. The transcript reveals there was discussion regarding the merits of the case and the procedural issues that affected how each party looked at case value. (ECF No. 27 at 2.) The mediator stated that given the discussion of these issues, the parties would stipulate or agree to dismiss the case with prejudice, with the parties to bear their own costs and attorneys fees. (*Id.*) The mediator explained to Plaintiff that because of the settlement agreement, the In Forma Pauperis (IFP) application would not be processed and Plaintiff would not be required to pay the $350 filing fee associated with the application. (*Id.*)

The mediator proceeded to explain the process to the parties, indicating that Defendant would prepare a "Stipulation To Dismiss With Prejudice" that stated the parties "understand and agree that they will dismiss this case with prejudice." (ECF No. 27 at 3.) This stipulation would be signed by both parties and subsequently submitted to the District Court. (*Id.*) When asked by the mediator if he had any questions regarding anything that was said, Plaintiff replied "No, ma'am," and when asked if he understood the agreement and wished to dismiss the case with

prejudice, Plaintiff replied "Yes ma'am." (*Id.*) Defendants also agreed to these terms and did not pose any questions. (ECF No. 27 at 4.) The parties agreed that Plaintiff would dismiss the case with prejudice in exchange to not pay the application fee, but the parties did not contemplate a further written settlement agreement.

Deputy Attorney General Darby Phelps mailed a stipulation and proposed order for dismissal with prejudice to Plaintiff, and filed a motion to extend stay until April 4, 2019, the date agreed upon during the EMC to submit the documents.

Shortly after receiving the stipulation and proposed order for dismissal with prejudice, Plaintiff filed his omnibus motion. (ECF No. 17.) Again, Plaintiff argues he did exhaust his administrative remedies and was fraudulently induced to agree to settle his case during the mediation. (*Id.*)

**B. The Parties' Arguments**

Plaintiff alleges the settlement agreement is null and void because the Defendants used "bully tactics and false statements" during the mediation. (*Id.* at 3.) In particular, Plaintiff alleges both the mediator and Defendants informed Plaintiff his case could be easily dismissed since he had not exhausted the administrative remedies as required by the Prison Litigation Reform Act (PLRA). (*Id.* at 5.) Plaintiff claims he entered into the settlement agreement because of this "deceit" and "fraud." (*Id.*) He maintains that he was not required to go onto the next grievance level when the response to the grievance at the prior level was overdue. (ECF No. 22.)

Defendants argue the Plaintiff was not misled regarding his lack of proper exhaustion under the PLRA. (ECF No. 18.) Defendants also argue that this was a binding agreement, memorialized on the record in open court; therefore, the settlement should be enforced. (*Id.* at 3-4.)

**C. Analysis**

Plaintiff does not dispute that he agreed to dismiss his case with prejudice in exchange for a waiver of the requirement that he pay the $350 filing fee over time, which is normally required of a prisoner granted IFP status. Instead, Plaintiff argues that the agreement he entered into is unenforceable because it was achieved through "fraud" and "deceit" by the mediator and the Defendants. (ECF No. 17.) Plaintiff makes these assertions based on his interpretation of the PLRA and NDOC Administrative Regulation 740 (AR), and the proper procedure required to exhaust all administrative remedies. Under the Plaintiff's interpretation of the regulatory language, he claims that he exhausted his administrative remedies and was entitled to bring his 1983 claim.

The Plaintiff's interpretations are contrasted to those of the Defendants, who Plaintiff alleges misled him into the settlement agreement. Not only do the Defendants argue there was no fraud or deceit because the information regarding the lack of proper exhaustion given to the Plaintiff was accurate, Defendants also argue the agreement entered by the parties was binding and should be enforced.

Therefore, the court will first address Plaintiff's claim that he was fraudulently induced into agreeing to settle his case, and secondly the court will address whether the parties entered into a binding agreement governed by basic contract principles.

**1. Fraud in the Inducement**

    **A. Legal Standard**

In Nevada, "[t]o establish fraud in the inducement, [the party asserting such a claim] must prove by clear and convincing evidence each of the following elements: (1) a false representation made by [the other party], (2) [the other party's] knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation), (3) [the other

party's] intention to therewith induce [the party claiming fraudulent inducement] to consent to the contract's formation, (4) [the party claiming fraudulent inducement's] justifiable reliance upon the misrepresentation, and (5) damage to [the party claiming fraudulent inducement] resulting from such reliance." *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc*, 120 Nev. 277, 290, 89 P.3d 1009, 1018 (2004) (citations omitted). There is never a presumption of fraud, and it must be "clearly and satisfactorily proved." *Id.* (citation omitted).

## B. Proper Exhaustion of Administrative Remedies

Since the dispute of whether Plaintiff was fraudulently induced rests on the interpretation of proper exhaustion of administrative remedies, it is necessary to discuss the PLRA and AR 740. The PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). These administrative remedies are typically accomplished through use of the prison's grievance procedure.

Proper exhaustion under the PLRA requires "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Therefore, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith,* 810 F.3d 654, 657 (9th Cir. 2016). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In Nevada, AR 740 establishes the grievance procedure for Nevada inmates to exhaust administrative remedies. The three levels that must be exhausted by the inmate are: an informal

grievance, a first-level grievance, and a second-level grievance. (ECF No. 18-1.) An inmate whose grievance is denied may appeal the grievance to the next level. (*Id*. at 6.) The time limit for a response to an informal-level and first-level grievance is 45 days, and the inmate has five days from the time he receives the response to file an appeal and proceed to the next grievance level. (*Id.* at 12, 14.) The time limit for a response to the second-level grievance is 60 days. (*Id.* at 15.) An overdue grievance response at any level is not an automatic finding for the inmate. The response must be completed, even if it is overdue. If the response is overdue, the inmate may proceed to the next grievance level. (*Id*. at 6.)

In his omnibus motion, Plaintiff asserts that he filed his informal-level grievance on August 4, 2016. Then, 60 days later, on October 4, 2016, he had not received a response even though he should have received a response within 45 days, so he filed his first level grievance. This is consistent with AR 740, which states that he may proceed to the next level if he does not get a timely response. He claims that when he filed his first level grievance and had not received a response at the informal level, he had "all legal standing to file his 1983 civil rights complaint then." (ECF No. 17 at 3-4.) He filed his complaint on December 1, 2016. (ECF No. 1-1.)

Plaintiff was still required under AR 740 to complete all three levels of the grievance process. It was proper for him to file a first-level grievance when he did not receive a timely response at the informal level. But filing the first-level grievance did not mean he could go ahead and file his lawsuit. He had to wait for a response, or for the 45-day time to provide a response, at the first level, and then proceed to the second level and wait for a response, or for the expiration of the 60-day timeframe before he was permitted to do so. Admittedly, he did not. Therefore, the information given to him by defense counsel and the mediator at the EMC was accurate: he did not properly and completely exhaust his administrative remedies.

In sum, Plaintiff failed to provide clear and convincing evidence that there was a false representation made to him at the EMC. Instead, Plaintiff received accurate information regarding his failure to properly exhaust his administrative remedies. Therefore, Plaintiff is not entitled to rescind the settlement agreement on the basis that he was fraudulently induced into settling his case.

**2. Binding Agreement**

As stated previously, the construction and enforcement of settlement agreements in Nevada are governed by principles of contract law. *May,* 121 Nev. at 672, 119 P.3d at 1257. For an enforceable contract to exist, there must be an offer and acceptance, meeting of the minds, and consideration. (*Id.*) Plaintiff does not argue that these elements were missing. Nevertheless, the court will briefly discuss how these elements are satisfied.

**a.  Offer and Acceptance**

During the EMC, the mediator stated that upon discussing the issues associated with the case, the parties agreed to dismiss the case with prejudice, with the parties to bear their own costs and attorney's fees. (ECF No. 27, trans. p. 2:14-21.) The mediator then specifically stated Plaintiff *agreed* to dismiss the case, and when asked if he had any questions regarding what the mediator said, Plaintiff replied "No ma'am." (ECF No. 27, trans. pp. 2:22-23, 3:14-16.) The mediator then asked Plaintiff "…is that your understanding and agreement, that you wish to dismiss this case with prejudice, with the parties to bear their own costs and attorney's fees?" to which Plaintiff replied "Yes, ma'am." (ECF No. 27, trans. p. 3:22-25.) These statements show a settlement agreement was offered to the Plaintiff and he accepted.

### b.  Meeting of the Minds

The mediator repeated the essential terms of the settlement agreement to both parties, saying, "Mr. Isham, is that your understanding and agreement, that you wish to dismiss this case with prejudice, with the parties to bear their own costs and attorneys fees?" to which Plaintiff replied "Yes, ma'am." (ECF No. 27, trans. p. 3:22-25.)

The mediator then repeated the same to Defendants, who also agreed to the terms. (ECF No. 27, trans. p. 4:1-5.) The mediator also made sure the parties understood the process the parties agreed on to sign and submit the document to the court. When asked after the first explanation of the process if he had questions about what was said, Plaintiff replied, "No ma'am." (ECF No. 27, trans. p. 3:1-16.) The mediator reiterated to Plaintiff, "So, what will happen is Ms. Phelps will send you that document and then you sign it, she signs it, and then she will send you a copy of the order once it's signed by Judge Du and this case will be over. All right sir?" (ECF No. 27, trans. p.4:7-11.) Plaintiff did not express any concerns over these terms and replied "Okay," after which he was again asked whether he had "any questions at all," and Plaintiff replied "I don't believe so, ma'am." (ECF No. 27, trans. p. 4:12-14.) Both parties knew and approved of the essential terms of the agreement and raised no concerns about them, indicating both parties agreed on the essential terms.

### c.  Consideration

The Defendants received Plaintiff's agreement to dismissal of the case with prejudice in exchange for their agreement to waive the requirement that Plaintiff pay the $350 filing fee over time, and vice versa. (ECF No. 27, trans. p. 2:22-25.) Therefore, the consideration element of the settlement is also met.

In sum, the parties entered into a  valid and binding agreement.

**D. Conclusion**

Defendants' motion to enforce the settlement agreement should be granted, and Plaintiff's omnibus motion denied. The parties entered into a binding settlement agreement that satisfies the basic elements of an enforceable contract, and the information given to the Plaintiff during the mediation was accurate, and free of fraud and deceit. The settlement should be enforced with respect to the following essential terms: Plaintiff agrees to dismissal with prejudice of his pending lawsuit, 3:16-cv-00696-MMD-WGC, with the parties to bear their own costs and attorney's fees. In exchange, Plaintiff will not be required to pay the $350 fee associated with his IFP application and the filing of the action. The United States District Court for the District of Nevada retains jurisdiction of this case until the terms of the settlement are effectuated.

These terms should be incorporated into any order adopting and accepting this Report and Recommendation.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion to enforce the settlement agreement (ECF No. 19), and **DENYING** Plaintiff's omnibus motion (ECF No. 17).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court

DATED: June 10, 2019.

_William G. Cobb_

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE